IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AIR SUNSHINE, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHEN M. CARL,<br><br>Defendant. | CIVIL NO.: 09-2019 (MEL) |
| AIR SUNSHINE, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>YVETTE HAU-LEPERA,<br><br>Defendant. | CIVIL NO.: 09-2039 (MEL) |
| AIR SUNSHINE, INC., et al,<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO LÓPEZ,<br><br>Defendant. | CIVIL NO.: 09-2041 (MEL) |

**OPINION AND ORDER**

## I.   PROCEDURAL HISTORY

On October 5, 2009, plaintiffs Air Sunshine, Inc., Air Sunshine de P.R., Inc. (together "Air Sunshine"), and Mirmohammad Adili ("Adili," and collectively "plaintiffs") filed a complaint in the

1

instant case against Stephen M. Carl ("Carl"), the principal maintenance inspector in the South

Florida Flight Standards District Office ("FSDO") of the Federal Aviation Administration ("FAA").

(Docket No. 1 (the "Carl complaint").)  Claiming, *inter alia*, that Carl intentionally delayed the

certification and inspection process for several of Air Sunshine's aircraft, plaintiffs assert federal

causes of action under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) and 42 U.S.C.

§ 1985, and also bring state law claims pursuant to Article 1802 of the Puerto Rico Civil Code, P.R.

Laws Ann. tit. 31, § 5141, and for tortious interference with contract and intentional infliction of

emotional distress.  Id.

On October 8, 2009, plaintiffs brought suit against FAA employees Yvette Hau-Lepera

("Hau-Lepera") and Sergio López ("López"), asserting identical claims based on the same nucleus

of facts.  (09-2039, Docket No. 1 (the "Hau-Lepera complaint")); (09-2041, Docket No. 1 (the

"López complaint").)  Hau-Lepera filed her answer on April 21, 2010, and Carl and López filed their

answers on February 22, 2010.  (09-2039, Docket No. 9; 09-2041, Docket No. 9; Docket No. 19.)

The three cases were subsequently consolidated.  (Docket No. 20.)

Pending before the court is defendants' motion for substitution of parties and for dismissal

of the complaint.  (Docket No. 31.)  Plaintiffs opposed the motion and defendants replied.  (Docket

Nos. 37; 42.)

## II.    FACTUAL BACKGROUND

Air Sunshine is a private airline based in San Juan, Puerto Rico.  (Docket No. 1, ¶ 1.)

Looking to expand its business, Air Sunshine entered into a lease in late 2005 to operate three SAAB

340 turboprop aircraft.  (Docket No. 1, ¶ 8.)  As part of that process, Air Sunshine was required to

obtain certifications from the South Florida FAA office, necessitating the approval of several

manuals and the passing of a number of "proving runs."  (Docket No. 1, ¶¶ 9-10.)  During the relevant time, Air Sunshine also sought from the same FAA office certification for its fleet of C-420 aircraft and a ferry permit needed to begin repairs on one of its aircraft.  (Docket No. 1, ¶¶ 32-47.)

SAAB 340 Aircraft

*Flight Attendant Manual Certification*

Plaintiffs claim that Air Sunshine submitted its flight attendant manual for the SAAB 340 to the FAA for certification in March 2006, and that it was subsequently approved.  (09-2039, Docket No. 1, ¶ 10.)  However, in November 2007, defendant Hau-Lepera, a FAA cabin safety inspector, informed Adili, president of Air Sunshine de P.R, Inc.., that the approval of the flight attendant manual was "null and void" and that the manual would have to be resubmitted in an entirely new format since Air Sunshine's principal operations inspector (POI) had not consulted her prior to submitting the manual for approval.  (09-2039, Docket No. 1, ¶¶ 11-12.)  Of note, plaintiffs do not dispute Hau-Lepera's claim that the POI was required to consult with her prior to approving the manual, stating instead that it was a "matter beyond Air Sunshine's control or knowledge."  (09-2039, Docket No. 1, ¶ 11.)  Despite Air Sunshine's protestations that the manual complied with FAA regulations, plaintiffs aver that they agreed to resubmit it to expedite the certification process.  (09-2039, Docket No. 1, ¶ 13.)  The Hau-Lepera complaint states that she caused further delay by then refusing to meet with plaintiffs to discuss the requested revisions until February 2008.  (09-2039, Docket No. 1, ¶¶ 14-15.)  Hau-Lepera finally approved plaintiff's flight attendant manual in August 2008.  (09-2039, Docket No. 1, ¶ 16.)  In total, plaintiffs claim to have submitted three versions of the flight attendant manual to Hau-Lepera, all of which were "functionally identical" and in compliance with FAA regulations.  (09-2039, Docket No. 1, ¶ 16.)  Plaintiffs allege that due to Hau-

3

Lepera's conduct, Air Sunshine was forced to abandon its plan to operate the aircraft in a 30-seat configuration.  (09-2039, Docket No. 1, ¶ 18.)

*Operations Certifications*

Air Sunshine met with FAA officials on or about October 8, 2008 about outstanding issues regarding Air Sunshine's operations manual for the SAAB 340 aircraft.  (Docket No. 1, ¶ 13.) During that meeting, plaintiffs claim that Adili told Carl, the principal maintenance inspector assigned to Air Sunshine, that Hau-Lepera, a good friend of Carl's, had done Air Sunshine "no justice," stating that the flight attendant manual remained "mired in unexplained delays."  (Docket No. 1, ¶ 14.)  Plaintiffs also assert that during the course of the meeting Carl made a racial slur about an African-American FAA employee, which plaintiffs claim caused "great alarm" and "discomfort" to Adili, himself a member of a racial minority.  (Docket No. 1, ¶ 15.)

Following the meeting, plaintiffs claim that Carl delayed the proving runs by sending a letter to Adili containing numerous questions that Air Sunshine had already answered.  (Docket No. 1, ¶ 17.)  Plaintiffs claim that in response to an e-mail from Adili regarding the timing of an upcoming meeting, Carl stated that previous FAA inspectors were incorrect and that Air Sunshine was not in compliance with FAA regulations.(Docket No. 1, ¶ 20.)  However, Carl did not inform Air Sunshine what specific regulations it was violating.  Id.

On or about November 24, 2008, Adili received an e-mail from Carl's assistant – signed by Carl – stating that Air Sunshine's latest submission to the FAA "lacked procedural format." (Docket No. 1, ¶ 23.)  On December 22, 2008, Carl sent Adili an e-mail stating that he could not simultaneously process both the SAAB 340 certifications and the C-402 aircraft inspections, and that Adili had to choose between them, even though Air Sunshine had been waiting for both tasks to be

4

completed for "well over one year."  (Docket No. 1, ¶ 25.)  In March 2009, an aviation consultant retained by Adili to assist with the manual revisions sent Carl a letter asking him to outline the specific concerns he had with the latest revision of the manual.  (Docket No. 1, ¶ 26.)  Later that month, the consultant sent an e-mail to defendant López, the office manager of the South Florida FSDO, as well as to the San Juan office manager, requesting that Carl be removed from Air Sunshine's case due to his "flagrant animus against Adili."  (Docket No. 1, ¶ 27.)  López responded that Carl was doing his job.  (Docket No 1, ¶ 29.)  On March 22, 2009, Adili sent a letter to López, copying President Obama and other government officials, complaining about the FAA's treatment of Air Sunshine, and of Carl's conduct in particular.  (Docket No. 1, ¶ 29.)   On March 26, 2009, Carl initiated an investigation of Air Sunshine's furnishings of schedule service.[1]   Plaintiffs claim that as result of Carl's conduct, Air Sunshine never received the needed certifications, and its business was "substantially destroyed."  (Docket No. 1, ¶ 31.)

C-402 Certification

Air Sunshine also operated a fleet of C-402 aircraft that was required by FAA regulations to be inspected by December 4, 2008.  (Docket No. 1, ¶ 32); see 14 C.F.R. § 135.422(b)(2).  Plaintiffs claim that they requested the mandatory inspection in July 2006, but that Carl – despite plaintiffs' repeated requests – ignored them until December 11, 2008, after the deadline had passed, when he told Adili that his assistant would conduct the requisite inspection.  (Docket No. 1, ¶¶ 33-34.)

---

[1]Plaintiffs' complaints appear to be inconsistent on this point.  In Carl's complaint, plaintiffs state that "the issuance and enforcement of [Air Sunshine's operating specifications] was outside the scope of [Carl's] authority." (Docket No. 1, ¶ 30.)  However, in López's complaint, plaintiffs state that "the issuance and enforcement of such specifications was Carl's responsibility and he had not accomplished it."  (09-2041, Docket No. 1, ¶ 31.)  In the context of a motion to dismiss, courts look to only well-pled allegations that are plausible on their face; therefore, these contradictory allegations will be ignored by the court for purposes of this motion.  See Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

Plaintiffs also claim that Carl denied Air Sunshine an extension for its inspection, and that, as a result, Air Sunshine lost its schedule authority, making it ineligible to bid for government contracts. (Docket No. 1, ¶¶ 39-42.)

In January 2009, plaintiffs hired their own airworthiness inspector and claim to have granted him the authority to perform the inspection in an e-mail to Carl.  (Docket No. 1, ¶ 36.)  Carl denied ever receiving the e-mail, and plaintiffs assert that despite the fact that their inspector completed the task in accordance with FAA regulations, Carl still refuses to accept the inspection pending approval of a revision that is not required by FAA regulations.  (Docket No. 1, ¶ 36.)  On January 22, 2009, plaintiffs claim that Adili e-mailed López requesting that Carl be removed from the Air Sunshine inspection process, but that López refused.  (09-2041, Docket No. 1, ¶¶ 50-51.)  As a result of Carl's actions, plaintiffs allege that Air Sunshine lost its lease on the C-402 aircraft, causing "substantial destruction" to Air Sunshine's business.  (Docket No. 1, ¶ 38.)

Ferry Permit

On or about August 25, 2008, Adili e-mailed Carl requesting a permit to transfer by ferry one of Air Sunshine's aircraft to Fort Lauderdale for repairs.  (Docket No. 1, ¶ 43.)  Carl responded that FAA regulations did not permit the ferrying of the aircraft at issue, which plaintiffs claim runs contrary to FAA regulations.  (Docket No. 1, ¶ 44.)  In any event, plaintiffs claim that Carl refused to issue the permit until October 2008, after physically inspecting the aircraft.  (Docket No. 1, ¶ 45.) As a result of this delay, the Carl complaint states that Air Sunshine lost revenue for the months the aircraft remained unrepaired, and that the aircraft sustained corrosion damage as a result of its prolonged grounding.  (Docket No. 1, ¶ 46.)  Plaintiffs also claim that the aircraft is currently undergoing repair and cannot be used because Carl refuses to inspect it.  (Docket No. 1, ¶ 46.)

**III. MOTION FOR SUBSTITUTION AND TO DISMISS AS A RESULT OF SUBSTITUTION**

Defendants move to substitute the United States for defendants Carl, Hau-Lepera and López pursuant to the Federal Tort Claims Act ("FTCA"). See 28 U.S.C. § 2679; (Docket No. 31, pp. 2-6.) Defendants also claim that plaintiffs Air Sunshine, Inc. and Airsunshine de P.R., Inc. have failed to exhaust their administrative remedies, and that the court therefore lacks subject matter jurisdiction over their claims. (Docket No. 31, p. 4.) Plaintiffs counter that such a substitution is improper where – as here – a civil action brought against government employees is based in part on constitutional violations. (Docket No. 37, pp. 4-8.)

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, amended the FTCA "to make an action against the United States the exclusive remedy for money damages for injury arising from the 'negligent or wrongful act or omission' of a federal employee 'acting within the scope of his office or employment,' ... [thus] making federal employees absolutely immune from suit for torts committed within the scope of employment." Aversa v. United States, 99 F.3d 1200, 1207 (1st Cir. 1996) (quoting 28 U.S.C. § 2679(b)(1)). "[U]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon [a common law tort against a federal employee] in a United States district court shall be deemed an action against the United States … and the United States shall be substituted as the party defendant." Roman v. Townsend, 224 F.3d 24, 27 n.3 (1st Cir. 2000) (quoting 28 U.S.C. § 2679(d)). Where parties bring claims under both constitutional and state law, courts have effected partial substitutions. See Velez-Diaz v. Vega-Irizarry, 421 F.3d 71, 76 (1st

7

Cir. 2005) ("the fact that this case raises both state law and federal constitutional claims does not render inapplicable the Westfall Act's requirement for the substitution of the United States for the defendants with respect to the state law claims."); Davric Me. Corp. v. United States Postal Serv., 238 F.3d 58, 65 (1st Cir. 2001) (affirming Westfall Act substitution only as to state law claims where plaintiff also asserted Bivens claims against federal employee); Aversa, 99 F.3d at 1206 (same).)

While certification is sufficient to substitute the United States as defendant, the certification is "provisional and subject to judicial review." See Davric, 238 F.3d at 65 (citing Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995)). Where plaintiffs are able to show that an employee acted outside the scope of his or her employment, that employee may be re-substituted as a party defendant.  See Davric, 238 F.3d at 65; Aversa, 99 F.3d at 1208.

In this case, attached to the pending motion for substitution is a certification from the United States Attorney for the District of Puerto Rico stating that Carl, López and Hau-Lepera are employees and officers of the FAA and were "acting within the scope of their federal employment as employees for the U.S. Department of Transportation under 49 U.S.C. § 44702 at the time of the incident which gave rise to the above-entitled action."[2] (Docket No. 31-1.)  Therefore, the courts finds that the United States must be substituted for Carl, Hau-Lepera, and López as the defendant in this action with respect to plaintiffs' state law claims.

Defendants further argue that once the substitution takes place, claims against the United States brought by plaintiffs Air Sunshine Inc. and Air Sunshine de P.R., Inc. should be dismissed due to their failure to exhaust administrative remedies.[3] (Docket No. 31, p. 4.)  Under the FTCA, a suit

---

[2]The Attorney General has delegated his certification authority under 28 U.S.C. § 2679(d)(1) to the United States Attorneys.  28 C.F.R. § 15.3(a).

[3]Defendants concede that plaintiff Adili satisfied the exhaustion requirement.  (Docket No. 31, p. 4.)

filed before administrative remedies have been exhausted is barred.  See Velez-Diaz v. United States, 507 F.3d 717, 718 (1st Cir. 2007) (citing McNeil v. United States, 508 U.S. 106, 112-13 (1993)); Natal-Rosario v. P.R. Police Dep't, 639 F. Supp. 2d 174, 182 (D.P.R. 2009) (following Westfall substitution, court dismissed without prejudice state claims against United States for plaintiffs' failure to exhaust administrative remedies).  Plaintiffs do not address defendants' failure to exhaust administrative remedies argument in their opposition, and nowhere do they suggest that the Air Sunshine plaintiffs complied with the requirements of 28 U.S.C. § 2675(a), requiring a claimant bringing an action against the United States for money damages to have presented the claim to the appropriate federal agency and that the claim to have been denied by the agency in writing.  (Docket No. 37.)  Therefore, upon substitution, claims against the United States brought by plaintiffs Airsunshine, Inc. and Airsunshine de Puerto Rico, Inc. will be DISMISSED without prejudice.  Id.; See Velez-Diaz v. United States, 507 F.3d 717, 719 (1st Cir. P.R. 2007) ("The FTCA provides that when such a conversion occurs and the case is dismissed for failure to exhaust, a plaintiff is given a fresh period of 60 days within which to file an administrative complaint even if the initial period for doing so has lapsed.") (citing 28 U.S.C. § 2679(d)(5)).

State Law Claims

Defendants argue that state law claims brought by Adili – the remaining plaintiff – should also be dismissed since, under the FTCA, a remedy against the United States

is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee.  Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

9

28 U.S.C. § 2679(b); (see Docket No. 42, pp. 1-2.)  The court finds that since the United States has been substituted as a defendant in this action, Adili's state law claims for negligence and intentional infliction of emotional distress fall under the FTCA and are therefore DISMISSED.  See Rosario v. United States, 538 F. Supp. 2d 480, 489-90 (D.P.R. 2008) (dismissing all negligence claims asserted against individual defendants pursuant to 28 U.S.C. § 2679(b)(1)); Machin v. Costas, 2009 U.S. Dist. LEXIS 106792 (S.D. Cal. Nov. 16, 2009) (substituting United States as defendant and dismissing, inter alia, plaintiff's claims for intentional infliction of emotional distress against individual defendant).

Adili's state law claims for tortious interference with contract, however, are dismissed for lack of subject matter jurisdiction.  See Balfour Land Co., L.P. v. United States, 2009 U.S. Dist. LEXIS 52289, at *26-*27 (M.D. Ga. June 22, 2009).  "The grant of jurisdiction and waiver of [sovereign] immunity are subject to a number of express exceptions." Id. (citing 28 U.S.C. § 2680).  Claims that fall under one of the enumerated exceptions to the FTCA must be dismissed for lack of subject matter jurisdiction.  Id. Under one such exception, sovereign immunity is not waived with respect to "[a]ny claim arising out of ... interference with contract rights." 28 U.S.C. § 2680(h).

Based on the foregoing, defendants' motion for substitution and dismissal (Docket No. 31) is hereby GRANTED as to Adili's state law claims.  Adili's claims under Article 1802 of the Civil Code and for intentional infliction of emotional distress are hereby DISMISSED.  Adili's claim for tortious interference with contract is hereby DISMISSED for lack of subject matter jurisdiction.

## IV.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.   Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Standard

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 599. The court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor.  See Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). While Twombly does not require of plaintiffs a heightened fact pleading of specifics, it does require enough facts to have "nudged their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555.

In Ashcroft v. Iqbal, __ U.S. __ , 129 S.Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified that two underlying principles must guide this court's assessment of the adequacy of a plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion.  See Iqbal, 129 S.Ct. at 1949-50.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."[4] Iqbal, 129 S.Ct. at 1950 (citing Twombly, 550 U.S. at 556).  Thus,

---

[4]The First Circuit has recently relied on these two principles as outlined by the Supreme Court.  See Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009).

any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Iqbal, 129 S.Ct. at 1950. Determining the existence of plausibility is a "context-specific task" which "requires the court to draw on its judicial experience and common sense." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' 'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 1950-51 (citing Twombly, 550 U.S. at 567).

### B.     Plaintiffs' Bivens Claim

The Bivens doctrine allows plaintiffs to bring a private cause of action for damages against federal officials in their individual capacities to enforce certain constitutionally protected rights. DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008). A claimant who seeks relief under Bivens must prove that a federal official, acting under color of federal law, violated a constitutional right. See Redondo-Borges  v. United States HUD, 421 F.3d 1, 6 (1st Cir. 2005). However, government officials are entitled to qualified immunity unless (1) "the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "the right at issue was 'clearly established' at the time of [their] alleged misconduct." Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010) (quoting Pearson v. Callahan, 129 S. Ct. 808, 816 (2009)). A right is "clearly established" if, at the time of the alleged violation, "[t]he contours of the right . . . [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Fontanes, 568 F.3d at 269 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Plaintiffs seek redress under <u>Bivens</u> for defendants' alleged violations of their constitutional rights "to substantive and procedural due process and to equal protection of the laws, in that [defendants] engaged in hostile and purposeful activity designed to deny the [p]laintiffs the normal operation of FAA regulations and procedures necessary to obtain the approvals and certifications essential to conduct the business of Air Sunshine."  (Docket No. 1, ¶ 49; 09-2039, Docket No. 1, ¶ 21; 09-2041, Docket No. 1, ¶ 77.)  Plaintiffs further allege that said violations were committed in retaliation for plaintiffs' exercise of their First Amendment right to complain about unlawful treatment by FAA officials.  (Docket No. 1, ¶ 51; 09-2039, Docket No. 1, ¶ 23; 09-2041, Docket No. 1, ¶ 83.)

Defendants argue that plaintiffs' <u>Bivens</u> claim should be dismissed because the complaints I) fail to state the specific constitutional breaches on which plaintiffs' claims are based, ii) fail to articulate why plaintiffs have a property right interest in the FAA certifications and permits at issue, iii) do not demonstrate how defendants' treatment of plaintiffs deviated from that afforded similarly situated applicants, and iv) fail to allege under the <u>Pearson</u> standard that the alleged regulatory delay was not only unconstitutional, but so "patently" unconstitutional so as to give fair warning to a reasonable person. (Docket Nos. 31, pp. 16-18; 42, pp. 3-4.)  Plaintiffs counter that the complaints sufficiently allege constitutional violations of their rights to procedural due process, substantive due process and equal protection, as well as for retaliation in violation of plaintiffs' First Amendment rights, and further that the FAA defendants are not entitled to qualified immunity.  (Docket No. 37, pp. 3, 12-18.)

Fifth Amendment Claim

The Fifth Amendment mandates that no person shall "be deprived of life, liberty, or property, without due process of law." Aguilar v. United States Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec., 510 F.3d 1, 21-22 (1st Cir. 2007); see U.S. Const. amend. V.  The due process guarantee has both procedural and substantive aspects.  Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990).  Furthermore, while the Fifth Amendment does not contain an equal protection clause *per se,* it has been interpreted to include an equal protection component.  See Cook v. Gates, 528 F.3d 42, 60 (1st Cir. 2008) (citing Bolling v. Sharpe, 347 U.S. 497, 499 (1954)).

*Procedural Due Process*

Procedural due process claims require courts to determine first if plaintiffs were deprived of a liberty or property interest protected by the United States Constitution and, if so, whether the "procedures attendant upon that deprivation were constitutionally sufficient."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 886 (1st Cir. 2010).  While due process is flexible, one of the essential requirements of procedural due process is adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner."  Amsden, 904 F.2d at 753 (citation and internal quotation marks omitted).  In evaluating the adequacy of the procedures employed, courts "balanc[e] a number of factors, including the nature of the private and public interests involved; the risk of erroneous deprivation accruing under the procedures used ... ; and the probable benefit of demanding additional procedural safeguards."  Id.

In this case, plaintiffs' due process claims are premised on allegations that defendants caused harm to Air Sunshine's business by purposely delaying: i) the mandatory certification process for

14

three recently leased SAAB 340 aircraft, ii) the certification for Air Sunshine's fleet of C-402 aircraft, and iii) the issuance of a ferry permit needed to commence repair on one of Air Sunshine's aircraft. (See Docket No. 1, ¶¶ 10-47.)   Yet, regarding the SAAB 340 certifications and ferry permit allegations, plaintiffs' complaints fail to provide the court with any plausible basis for determining whether the alleged delays were significant enough so as to effectively deprive plaintiffs of a property interest.  (Docket No. 1; 09-2039, Docket No. 1; 09-2041, Docket No. 1); see 3004 Albany Crescent Tenants' Ass'n v. City of New York, 1997 U.S. Dist. LEXIS 6138 (S.D.N.Y. May 5, 1997) (procedural due process claim dismissed where "complaint as drafted fails to sufficiently articulate that plaintiffs have been deprived of property right protected by the Fourteenth Amendment without the requisite procedural due process."); Williams v. Perry, 960 F. Supp. 534, 538 (D. Conn. 1996) (dismissing, *inter alia*, procedural due process claim as complaint does not allege that plaintiff was deprived of a constitutionally protected property interest).  For example, plaintiffs did not include allegations regarding:  i) how long said certification and permit processes typically take, ii) whether pertinent regulations required the inspections and/or certifications to be completed by a given date, or iii) how those similarly situated have been treated by the FAA.  Without any basis to make such determination, the court refuses to speculate and therefore finds that plaintiffs' procedural due process claims regarding the SAAB 340 aircraft and ferry permit hereby DISMISSED.

However, regarding the C-402 certification, plaintiffs allege that Air Sunshine requested inspection of said aircraft in July 2006, but that Carl, despite plaintiffs' repeated pleas, did not schedule the inspection until after the deadline established by FAA regulations had passed, resulting in the loss of the lease and causing "substantial destruction" to Air Sunshine's business.   (Docket No. 1, ¶¶ 32-42); see 14 C.F.R. § 135.422(b)(2).  Moreover, the complaint alleges that Carl refused to grant

15

plaintiffs an extension, as permitted by FAA regulations, resulting in the loss of Air Sunshine's schedule authority. Id. The court finds that such conduct – if proven – would constitute a deprivation of plaintiffs' property interest, and that plaintiffs have therefore sufficiently alleged a claim for procedural due process with respect to the C-402 certification process.

Furthermore, it is clearly established, and was at the time of the events in question, that plaintiffs had a property interest in the C-402 certification process, as Air Sunshine would not be able to use the aircraft if they were not properly certified. See United States v. Vertol H21C, 545 F.2d 648, 650 (9th Cir.1976) (in case where FAA temporarily seized claimant's helicopter, court found "[t]here can be no dispute" that even temporary seizure of aircraft was a deprivation of property within the meaning of the Fifth Amendment, entitling claimant to due process protections). Therefore, defendants are not entitled to qualified immunity for such a violation. See Fontanes, 568 F.3d at 269.

*Substantive Due Process*

Regarding plaintiffs claims under substantive due process, such claims bar certain government actions "regardless of the fairness of the procedures used to implement them." Aguilar, 510 F.3d at 21 (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)). Under substantive due process analysis, courts look to "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Aguilar, 510 F.3d at 21 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). The "shock the conscience"standard is a high hurdle for plaintiffs, but is necessary to "preserve the constitutional proportions of constitutional claims, lest the Constitution be demoted to what we have called a font of tort law." Id. In this case, plaintiffs' allegations do not rise to the requisite level. See, e.g., Pagan v. Calderon, 448 F.3d 16, 31

16

(1st Cir. 2006) (in context of Fourteenth Amendment claim, court stated that it is well-settled that other than where "truly horrendous," "substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong."). Plaintiffs' substantive due process claims are therefore DISMISSED.

*Equal Protection*

The equal protection component of the Fifth Amendment guarantees that "all persons similarly situated should be treated alike." Goichman v. N.H., 2010 U.S. Dist. LEXIS 114541, at *11 (D.N.H. Oct. 1, 2010); see Toledo v. Sanchez, 454 F.3d 24, 33 (1st Cir. 2006) (dismissing Fourteenth Amendment equal protection claim). Plaintiffs claiming violations of their equal protection rights must "first identify and relate specific instances where persons similarly situated in all relevant aspects were treated differently, instances which have the capacity to demonstrate that plaintiffs were singled out for unlawful oppression." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis, alterations and internal quotations omitted). In this case, while not clearly articulated, plaintiffs appear to be basing their equal protection claim on racial discrimination grounds, stemming from a comment Carl made about an African American FAA employee. (Docket No. 1, ¶ 15.) However, plaintiffs fail to demonstrate how the treatment they received at the hands of the defendants differed from that of similarly situated persons. See Irwin v. Miami-Dade County Pub. Sch., 2010 U.S. App. LEXIS 20563, at *10 (11th Cir. Fla. Oct. 4, 2010) (affirming dismissal of, *inter alia*, plaintiff's Section 1983 claim where plaintiff "[could not] establish an equal protection violation because he failed to show that others similarly situated were treated differently."); Levine v. McCabe, 357 F. Supp. 2d 608, 621 (E.D.N.Y. 2005) (equal protection claim under Section 1983 dismissed where plaintiff did not point

17

to any other individual similarly situated to him, but more favorably treated by the defendants); <u>Parker</u> <u>v. City of Elgin</u>, 2005 U.S. Dist. LEXIS 18996, at *29-*30 (N.D. Ill. Aug. 30, 2005) (granting defendant's summary judgment motion as to plaintiff's equal protection claims, court found "conclusory allegation that [plaintiff] was similarly situated to [a class of employee] entirely insufficient.").[5]  Therefore, plaintiffs claims based on a violation of their equal protection rights are hereby DISMISSED.

<u>First Amendment Claim</u>

To prevail on a First Amendment retaliation claim, a plaintiff must prove that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001) (citation omitted); <u>see</u> <u>Baker v. Coxe</u>, 230 F.3d 470, 475 (1st Cir. 2000) (holding that the delay of a land use permit in unjustifiable retaliation for the applicant's expressions of his political views may violate the First Amendment if the plaintiff proves:  i) that he was engaged in protected speech; ii) that he was qualified for the permit; and iii) that the delay was in retaliation for protected speech).  Courts have held that complaining to an FAA employee's supervisors regarding an alleged constitutional violation by the employee constitutes clearly established protected speech under the First Amendment, not protected by qualified immunity.  <u>See</u> <u>Capozzi v. DOT</u>, 135 F. Supp. 2d 87, 96 (D. Mass. 2001) ("allegation that FAA employees delayed regulatory action to punish [plaintiff] for complaining about the alleged sexual harassment by [defendant FAA employee] is viable as a <u>Bivens</u> action under clearly

---

[5] While the cases cited concern § 1983 rather than <u>Bivens</u> claims, courts cite cases grounded on <u>Bivens</u> and § 1983 claims interchangeably in analyzing constitutional claims.  <u>See</u> <u>Rodriguez v. Beninato</u>, 469 F.3d 1, 4 n.1 (1st Cir. 2006).

established First Amendment jurisprudence.") (citing Baker, 230 F.3d at 475).  In this case, plaintiffs claim that they were retaliated against due to a complaint Adili made to Carl regarding Hau-Lepera during an October 2008 meeting, as well as in response to several complaints Adili made to López about Carl and Hau-Lepera.  (Docket No. 1, ¶ 14, 51; 09-2041, Docket No. 1, ¶¶ 29-30, 38-39, 50-51.) Therefore, plaintiffs have sufficiently alleged a violation of their First Amendment rights.

Defendants

Having found that plaintiffs sufficiently set forth violations of procedural due process based on the C-402 certification process and retaliation claims under the First Amendment, the court now examines these claims as to each of the individual defendants.

*Hau-Lepera*

Plaintiffs claim that Hau-Lepera, a FAA cabin safety inspector, violated their due process rights by intentionally delaying the flight attendant certification manual for the SAAB 340 aircraft, and that she acted in retaliation for plaintiffs' exercise of their First Amendment rights to complain about their unlawful treatment at the hands of FAA employees.   (09-2039, Docket No. 1, ¶¶ 21, 23-24.) Concerning plaintiffs' due process claims, the Hau-Lepera complaint does not allege that she had any involvement in the C-402 certification process.  (09-2039, Docket No. 1.)  As all other due process claims have already been dismissed herein, all Fifth Amendment claims against Hau-Lepera are hereby DISMISSED.

Regarding plaintiffs' First Amendment retaliation claim, the Hau-Lepera complaint does not specifically allege that plaintiffs made any complaints during the time Hau-Lepera oversaw Air Sunshine's flight attendant manual.  (09-2039, Docket No. 1.)  Further, to the extent plaintiffs base

their First Amendment retaliation claims on comments Adili made to Carl about Hau-Lepera in an October 2008 meeting (see Docket No. 1, ¶ 24), those comments are irrelevant since plaintiffs do not allege that Hau-Lepera had any interaction with plaintiffs after August 2008.  (09-2039, Docket No. 1.)  Therefore, all claims against Hau-Lepera based on violations of the First Amendment are hereby DISMISSED.

*Carl*

The Carl complaint contains allegations that Carl, Air Sunshine's principal maintenance inspector, intentionally delayed the inspection and certification processes for Air Sunshine's newly leased SAAB 340 aircraft, the maintenance certification for the C-402 aircraft, and the issuance of a ferry permit.  (Docket No. 1, ¶¶ 10-47.)  As stated above, plaintiffs have sufficiently alleged a colorable procedural due process claim against Carl concerning his conduct with regard to the C-402 certification process.

Plaintiffs also allege that during an October 2008 meeting between Air Sunshine and FAA officials, Adili told Carl that Hau-Lepera had done Air Sunshine "no justice" and that the flight attendant manual certification that Hau-Lepera was responsible for remained "mired in unexplained delays." (Docket No. 1, ¶ 14.)  Plaintiffs allege that Carl, a friend of Hau-Lepera, intentionally caused delays to Air Sunshine on account of this and other complaints.  (Docket No. 1, ¶ 51.)  Based on the foregoing, the court finds that plaintiffs have sufficiently alleged a First Amendment violation – actionable under Bivens – against Carl.  See Capozzi, 135 F. Supp. 2d at 96.  Therefore, defendants' motion (Docket No. 31) for dismissal is hereby DENIED with respect to plaintiffs' claims under Bivens against Carl.

*López*

Plaintiffs assert that López, the office manager of the FAA's South Florida FSDO, violated plaintiffs' due process rights in retaliation for plaintiffs' exercise of their First Amendment rights to complain about their unlawful treatment by FAA employees.  (09-2041, Docket No. 1, ¶¶ 81, 83.)  However, plaintiffs claims against López stem only from his role as supervisor of Hau-Lepera and Carl, as the López complaint asserts that his failure to supervise his subordinates constitutes gross negligence.  (09-2041, Docket No. 1, ¶ 81.)

Regarding supervisory liability, the Supreme Court has stated that "[b]ecause vicarious liability is inapplicable to Bivens ... suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948; see Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) ("the plaintiff must state a claim for direct rather than vicarious liability; respondeat superior is not a viable theory of Bivens liability"). Supervisory liability therefore lies only where "(1) the behavior of [a supervisor's] subordinates results in a constitutional violation, and (2) the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference."  Pineda v. Toomey, 533 F.3d 50, 54 (1ˢᵗ Cir. 2008) (quoting  Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)).  The requirement of an "affirmative link" between the behavior of a subordinate and the action or inaction of his supervisor "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Pineda, 533 F.3d at 54 (quoting Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995)). Deliberate indifference, moreover, "will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional

rights." Id. (internal citation and quotation marks omitted).  "[P]roof of mere negligence, without more, is inadequate to ground supervisory liability."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 583 (1st Cir. 1994).

In this case, plaintiffs allege that López's failure to supervise Carl and Hau-Lepera, among others, constituted gross negligence, stating that "in light of [López's] knowledge of the abusive and unlawful conduct of his subordinates directed toward the plaintiffs, [López] was deliberately indifferent to the constitutional violations being committed by [them.]" (09-2041, Docket No. 1, ¶ 81.) However, since supervisory liability lies only where a subordinate's conduct results in a constitutional violation, the court will only examine López's actions with regard to Carl, as all claims against Hau-Lepera have been dismissed herein.

Concerning Carl, plaintiffs allege that Adili e-mailed López shortly after Carl was assigned as Air Sunshine's principal maintenance inspector to complain about Carl's "abusive conduct," but that López treated plaintiffs' concerns "dismissively."  (09-2041, Docket No. 1, ¶ 29.)  Plaintiffs further claim that Adili sent an e-mail to López in January 2009 requesting that Carl be removed from his position as Air Sunshine's principal maintenance inspector due to his "inconsistent, unreliable, and openly hostile conduct," but that López refused.  (09-2041, Docket No. 1, ¶¶ 50-51.)  The López complaint also states that in or around March 22, 2009, plaintiffs complained to López by letter, copying President Obama and other government officials, about the treatment Air Sunshine was receiving by Carl and other FAA employees under López's supervision.  (09-2041, Docket No. 1, ¶ 30.)

While it is unclear at this stage in the proceedings what steps – if any – López took to investigate plaintiffs' complaints, and whether his refusal to remove Carl from the Air Sunshine certification process was justified, plaintiffs have sufficiently alleged that López had notice of Carl's alleged violations of plaintiffs' due process and First Amendment rights, and thus that his failure to reprimand Carl could constitute an impermissible condonation of those violations.  See Colon v. Davila, 137 F. Supp. 2d 39, 43 (D.P.R. 2001) (motion to dismiss Section 1983 action denied as to supervising officers where complaint alleged, *inter alia*, that they failed to conduct adequate investigations of alleged officer misconduct); Lipsett v. University of Puerto Rico, 864 F.2d 881, 907 (1st Cir. P.R. 1988) (summary judgment denied with respect to supervising doctors where record showed that they knew of, but failed to investigate, sexual harassment directed at plaintiff, and that it was reasonable to infer that this failure discredited the plaintiff and sent a message to the male offenders to continue their misconduct with impugnity).  Based on the foregoing, the court finds that defendants' motion (Docket No. 31) for dismissal is hereby DENIED with respect to plaintiffs' Bivens claim against López.

**C.     Plaintiffs' Claims Under 42 U.S.C. § 1985**

Plaintiffs also claim that defendants conspired to deprive them of their civil rights in violation of 42 U.S.C. § 1985 ("Section 1985").  (Docket No. 1, ¶¶ 54-59; 09-2039, ¶¶ 26-31; 09-2041, Docket No. 1, ¶¶ 86-91.)  Defendants counter that, among other things, this cause of action is barred by the intracorporate conspiracy doctrine, which states that employees or agents of a single corporation or government entity cannot be found to have conspired with themselves.  (Docket No. 31, p. 21.)  In response, plaintiffs claim that the intracorporate conspiracy doctrine does not apply in the civil rights context.  (Docket No. 37, p. 20.)  The First Circuit has applied the doctrine in the context of Section

1985, but only in limited circumstances.  See Stathos v. Bowden, 728 F.2d 15, 21 (1st Cir. 1984) (finding that the "boundaries of an 'intracorporate' exception to § 1985(3) conspiracy provision should be narrower than in antitrust," the court held that the intracorporate conspiracy doctrine did not apply where "defendants' activities ... went beyond 'a single act' of discrimination.") As plaintiffs allege multiple acts committed by defendants in the delaying of I) Air Sunshine's mandatory certification for three recently leased SAAB 340 aircraft, ii) the certification for Air Sunshine's fleet of C-402 aircraft, and iii) the issuance of a ferry permit (See Docket No. 1, ¶¶ 10-47), the doctrine is therefore inapplicable to the instant case.

Section 1985 prohibits "two or more persons in any State or Territory [from] conspir[ing to] ... depriv[e] ... any person or class of persons of the equal protection of the laws." Perez-Sanchez v. Public Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).  To prevail on such a claim, a plaintiff must allege that (1) a conspiracy existed, (2) the defendants had "a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws," (3) the defendants committed an "overt act in furtherance of the conspiracy," and (4) the plaintiff suffered "injury to person or property, or a deprivation of a constitutionally protected right." Perez-Sanchez, 531 F.3d at 107.  A plaintiff must also prove that the conspiracy was motivated by some "racial, or perhaps otherwise class-based, invidiously discriminatory animus." Maymi v. P.R. Ports Auth., 515 F.3d 20, 31 (1st Cir. 2008) (quoting Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993)).  Furthermore, the plaintiff must show that the conspiracy was "aimed at interfering with protected rights." Donahue v. Boston, 304 F.3d 110, 122 (1st Cir. 2002) (citation omitted); see also Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

In this case, plaintiffs claim that they were treated differently than similarly situated persons in their dealings with the FAA, and that defendants were motivated by a discriminatory animus.

(Docket No. 1, ¶¶ 56-58); (09-2039, Docket No. 1, ¶¶ 28-30); (09-2041, Docket No. 1, ¶¶ 88-90.) However, the complaints contain no non-conclusory allegations showing that the defendants worked together to deprive plaintiffs of their constitutional rights.  (Docket No. 1); (09-2039, Docket No. 1); (09-2041, Docket No. 1.)  See Arroyo-Santiago v. Garcia-Vicario, 1999 U.S. App. LEXIS 17909, at *11 (1st Cir. July 28, 1999) (affirming dismissal of Section 1985 claim where complaint lacked "minimum factual support of the existence of a conspiracy.") (quoting Francis-Sobel v. Univ. of Maine, 597 F.2d 15, 17 (1st Cir. 1979); Slotnick v. Garfinkle, 632 F.2d 163, 166 (1st Cir. 1980) (affirming dismissal where complaint "neither elaborates nor substantiates its bald claims that certain defendants 'conspired' with one another.").  Furthermore, even making all inferences in plaintiffs' favor, the complaints lack any well-pled allegations that defendants Hau-Lepera or López were motivated by the requisite "racial, or ... otherwise class-based, invidiously discriminatory animus." Iqbal, 129 S.Ct. at 1949; (Docket No. 1); (09-2039, Docket No. 1); (09-2041, Docket No. 1.)  For instance, while plaintiffs aver that Carl used a racial slur in reference to an African-American FAA employee, there are no allegations that Hau-Lepera or López defendant ever made a racially-charged comment, or were present at the October 2008 meeting where Carl allegedly did so.  (Docket No. 1); (09-2039, Docket No. 1); (09-2041, Docket No. 1.)  Thus, Carl's conduct – if true – is reprehensible, but insufficient to serve as the sole basis for a civil rights conspiracy claim.

Based on the foregoing, defendants' motion for dismissal (Docket No. 31) is hereby GRANTED with regard to plaintiffs' civil conspiracy claims under Section 1985.

**V. CONCLUSION**

In view of the above, defendants' motion for substitution and dismissal (Docket No. 31) is GRANTED IN PART and DENIED IN PART, as follows:

1.      defendants' motion for substitution is GRANTED with respect to plaintiffs' state law claims and DENIED as to claims under <u>Bivens</u> and 42 U.S.C. § 1985;

2.      plaintiffs Air Sunshine Inc.'s and Air Sunshine de P.R., Inc.'s state law claims against the United States are hereby DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies;

3.      plaintiff Adili's claims against the United States under Article 1802 and for intentional infliction of emotional distress are hereby DISMISSED as precluded by the FTCA;

4.      plaintiff Adili's tortious interference with contract claims against the United States are hereby DISMISSED for lack of subject matter jurisdiction;

5.      plaintiffs' substantive due process and equal protection claims are hereby DISMISSED as to all defendants for failure to state a claim upon which relief can be granted;

6.      plaintiffs' procedural due process claims and First Amendment claims are hereby DISMISSED as to defendant Hau-Lepera for failure to state a claim upon which relief can be granted;

7.      defendants' motion to dismiss <u>Bivens</u> claims is hereby GRANTED as to defendant Hau-Lepera, but DENIED as to defendants Carl and López regarding procedural due process and First Amendment claims; and

26

8.      plaintiffs' claims for civil conspiracy pursuant to 42 U.S.C. § 1985 are hereby DISMISSED

as to all defendants for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of November, 2010.

s/Marcos E. López
United States Magistrate Judge